Opinion by Judge NOONAN. Dissent by Judge FERGUSON.
NOONAN, Circuit Judge:
Defenders of Wildlife and the Center for Biological Diversity (collectively Defenders) appeal the grant of summary judgment to the Army Corps of Engineers (the Corps). Defenders challenged the decision of the Corps not to consult with the Fish and Wildlife Service (the Service) on the effect on the Arizona cactus ferruginous pygmy-owl of two developments in Arizona. The district court found that the Corps’ ■ determination that the developments would have no effect on the pygmy owl was not arbitrary or capricious. We affirm its judgment.
FACTS
The cactus ferruginous pygmy-owl, the bird at the center of our case, is described in National Ass’n of Home Builders v. Norton, 340 F.3d 835, 838 (9th Cir.2003), where a description of its habitat is also set out. In that case, we also described how the Service came to designate the Arizona pygmy-owl as a discrete population segment (DPS), distinct from the pygmy-owls in Texas and in Mexico. We held that the Service had not demonstrated a rational basis in the listing rule for its finding that the Arizona pygmy-owl was a significant part of the taxon to which it belongs and-therefore the Service had acted arbitrarily and capriciously in designating the Arizona pygmy-owl as a DPS. Id. at 852.
The Continental Reserve Permit. In December 1999, the Corps received a permit application under the Clean Water Act, 33 U.S.C. § 1344 (a Section 404 permit application), for the Continental Reserve project, a 598-acre property being developed in the town of Maraña, Arizona. Continental Reserve is a master-planned community with single-family residences, a 9-acre community park, a 10-acre elementary school site, and large areas of undisturbed open space.
The Service objected to the Corps’ preliminary determination that the project would not affect federally listed species or their critical habitat and that formal consultation under Section 7 of the Endangered Species’ Act (ESA), 16 U.S.C. § 1536(a)(2), 50 C.F.R. § 402.14, would not be required. The Service contended that “this particular project area serves as a movement corridor for the [pygmy-owl] and likely provides nesting, roosting, and foraging habitat.”
On March 22, 2001, the Corps issued its Environmental. Assessment, finding that the proposed activities would have no impact on the pygmy-owl or adjoining habitat. On that same date, it issued the Section 404 permit to Continental Reserve. After the permit had been issued, the Service continued to object, requesting formal consultation and notifying the Corps that it did not concur in its “no effect” determination.
The Entrada del Oro Permit. On November 22, 2000, Grosvernor Holdings (Grosvernor), a property owner, submitted a request to the Corps for an individual Section 404 permit under the Clean Water Act for the Entrada del Oro project.. En-trada del Oro is a master planned community in Pinal County, Arizona, comprised of 440 acres which will contain single family residences, parks, a school site, and open spaces.
On November 15, 2001, the Corps issued its Environmental Assessment for the En-trada del Oro project. The Corps noted that it had withdrawn its initial request for consultation with the Service after the *1069 area had no longer been designated critical habitat, and that it had “fully considered” the Service’s comments. On December 5, 2001, the Corps issued Grosvernor’s permit. The permit had special conditions that mandated, inter alia, regular surveys for pygmy-owls in the future. After the Entrada del Oro permit had been issued, the Service requested formal consultation “to ensure that both the Corps and Gros-vernor Holdings are in compliance with the Act.”
PROCEEDINGS
Defenders filed suit against the Corps under the ESA, 16 U.S.C. § 1536(a)(2), 50 C.F.R. § 402.14, and the Administrative Procedure Act (APA), 5 U.S.C. §§ 701-706. Defenders challenged the Corps’ “no effect” determinations and its decisions to forgo Section 7 consultations with the Service regarding the Continental Reserve and Entrada del Oro projects under the ESA.
Grosvernor filed a motion to intervene as of right under Fed.R.Civ.P. 24(a)(2). The court granted the motion as to the remedial phase of the litigation, but denied it as to the liability phase.
The parties filed cross-motions for summary judgment. On August 18, 2003, the court issued two orders granting the Corps’ motions as to its permitting decisions for Continental Reserve and Entrada del Oro. The court noted that “the ■ ‘no effect’ determination was a decision for the Corps to make, not the USFWS.” The court found that
based upon the best scientific and commercial evidence in the administrative record and the Corps’ contemporaneous explanations for their ‘no effect’ determination, it is clear that the Corps considered the relevant factors based upon the voluminous data before it, reasonably rejected the undocumented assertions made by the USFWS, and articulated a rational connection between the facts and its decision to make a ‘no effect’ determination. . ' ■
On August 18, 2003, the court entered final judgment against Defenders. This timely appeal followed.
ANALYSIS '
Jurisdiction. Grosvernor and amici challenge our jurisdiction arguing that the Defenders lack standing. They have, however, as the district court held, sufficiently established Their members’ interest in the Arizona pygmy-owl; that the Corps’ decisions arguably may affect the bird and what may be its habitat; and that-a-contrary decision would have led to a remedy. Even now the case is not moot becausé a court could design a remedy to provide protection for the bird.
The Action" Agency’s Responsibility. Regulations under the ESA provide:
Requirement for formal consultation. Each Federal agency shall review its actions at the earliest possible.time to determine whether any action may affect listed species or critical habitat. If such' a determination is made, formal consultation is required, except as noted in paragraph (b) of this section. The Director [of the Fish and Wildlife Service] may request a Federal, agency to enter into -consultation if he identifies any action of that agency that may affect listed species or critical habitat and for which there has been no consultation. WThen such a request is made, the Director shall forward to the Federal agency a'written explanation of the basis for the request.
50 C.F.R. § 402.14(a). The Service can request the action agency to enter into formal consultation. Nothing in the regulations mandates the action agency to enter into consultation after it receives such *1070 a request. On the contrary, as the Service has explained:
Although the Service will, when appropriate, request consultation on particular Federal actions, it lacks the authority to require the initiation of consultation. The determination of possible effects is the Federal agency’s responsibility. The Federal agency has the ultimate duty to ensure that its actions are not likely to jeopardize listed species or adversely modify critical habitat. The Federal agency makes the final decision on whether consultation is required, and it likewise bears the risk of an erroneous decision.
51 Fed.Reg. 19926, 19949 (June 3, 1986). This court has come to the same conclusion. See Southwest Center for Biological Diversity v. U.S. Forest Service, 100 F.3d 1443, 1447-48 (9th Cir.1996).
The “No Effect” Rulings. Our decision in National Ass’n of Home Builders v. Norton, 340 F.3d 835 was filed August 19, 2003, one day after the district court entered judgment in the instant case. Our decision puts in doubt the status of the Arizona pygmy-owl as a significant part of its taxon and would seem to require its delisting as a DPS.[1] We could rely on Ass’n of Home Builders in affirming the judgment in this casé. Out of an abundance of caution, we review the district court’s decision de novo and hold that the decision rested on. the firm foundation that no pygmy-owls had been found to live within either project area. True, the Service had once designated the Entrada del Oro area as critical habitat for the Arizona pygmy-owl; but this designation was vacated by the district court in Ass’n of Home Builders and thereafter the Service did not designate it as critical, noting “the lack of recent, verified locations and our inability to determine the presence of the primary constituent elements.” 67 Fed. Reg. at 71040, Table 1. Similarly, the Service’s nondesignation as critical of the Continental Reserve project area was properly read by the Corps as a finding that the *1071 land “was not essential to the functioning of Unit 3 as a corridor for movement of pygmy-owls.”
Grosvemor’s Appeal Our disposition of the case makes it unnecessary to decide Grosvernor’s appeal from the judgment limiting its intervention.
For the reasons stated, the judgment of the district court is AFFIRMED.

. On November 12, 2003, the National Association of Home Builders filed a request for entry of final judgment with the district court, urging "entry of judgment pursuant to the Ninth Circuit's decision that declares unlawful and vacates the Listing Rule.” Order of the district court in National Ass’n of Home Builders v. Norton, CV 00-0903 (D.Ariz.), June 28, 2004. The district court took over six months to rule on this motion and then denied it in the above-referenced order, which has been supplied to us by Defenders. The district court acknowledged that the error detected by the Ninth Circuit in the listing rule was substantive, not procedural, and normally a substantially erroneous listing should be vacated. Citing to two decisions of other district courts, the district court held that it had the power to decline to set aside the listing. The court held that if it vacated the rule "the twenty to forty birds comprising the Arizona pygmy-owl population would be entirely without protection under the ESA during the remand period.”- The court did not note the interest of the victorious plaintiffs in having the listing declared void. The court remanded to the Service without vacating the rule and without setting a time table for action by the Sendee. This result was all the more remarkable in that, as the court observed, the Service had indicated that "its attempts to continue its research regarding the pygmy-owl population in Arizona may be delayed by budgetary restraints, suggesting that the period without protection could be lengthy.” As the court also noted, the Service had not objected to the vacating of its rule. Opposition to that came only from Defenders, an intervenor in the case. The upshot is that a listing rule that this court found to be arbi-traiy and capricious on August 19, 2003 is still alive in Arizona in April 2005 with no foreseeable termination in sight.
The history is also instructive on another point. In oral argument in this court it was speculated that our case was "a turf war” between the Service and the Corps. It may have been so at the start. But the Service appears to be hors de combat. The case is between the Corps and the nongovernmental appellant.